# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>LARRY VICTOR ZIMONT and<br>JESSICA BARRY ZIMONT,<br><br>Debtors. | Chapter 11 Proceedings<br><br>Case No.: 2:19-bk-09079-DPC<br><br>AMENDED UNDER ADVISEMENT ORDER RE: POST-PETITION RETIREMENT LOAN PAYMENTS AND CONTRIBUTIONS TO RETIREMENT PLAN<br><br>[NOT FOR PUBLICATION] |

Before this Court is the question of whether Debtors' post-petition retirement loan repayments and contributions to their retirement account prevent confirmation of Debtors' chapter 11 plan. Because the Debtors failed to adequately disclose in their Amended Plan and Amended Disclosure Statement their continued retirement plan contributions, the Court denies confirmation of Debtors' plan. So long as any plan submitted by the Debtors (a) fails to return to the estate their post-petition retirement account loan repayments and post-petition retirement plan contributions or (b) calls for additional payments or contributions during the life of their proposed plan, the Court cannot find Debtors' plan to be proposed in good faith.

## I.   BACKGROUND

On July 23, 2019, Debtors, Larry Victor Zimont and Jessica Barry Zimont ("Debtors") filed this chapter 11 case.[1] Ms. Zimont is employed as Director of Transplant at Banner Health. Her monthly take home income is $8,850.[2] This income is net of a

---

[1] DE 1. "DE" references a docket entry in the case 2:19-bk-09079-DPC.
[2] *Id*. at Schedule I, pages 45 – 46 of 71.

1

payroll deduction of $506/month paid towards her retirement plan.[3] Mr. Zimont recently became employed as a Client Business Partner. He now receives a salary of $4,230.77 every other week.[4] Debtors' Schedules and Statements disclose $28,900 in secured obligations[5] and $488,900 in non-priority unsecured debt.[6]

On December 2, 2019, Debtors filed their Chapter 11 Plan of Reorganization[7] ("Plan") and Disclosure Statement in Support of Debtors' Chapter 11 Plan of Reorganization[8] ("Disclosure Statement"). At the Court's hearing on Debtors' Disclosure Statement, the Court raised concerns about Debtors' Plan.[9] Among other things, the Court focused on the fact that Debtors were using estate property (post-petition wages) to repay a pre-petition loan ("Retirement Plan Loan") against Ms. Zimont's 403(b) retirement plan.

Debtors then filed their First Amended Plan[10] ("Amended Plan") and First Amended Disclosure Statement[11] ("Amended Disclosure Statement"). Debtors also filed the Report of Ballots[12] and Declaration of Debtors in Support of Confirmation[13] ("Declaration"). Debtors' Declaration states:

> [Debtors] believe and declare that our Amended Plan was filed in good faith and not by any means forbidden by law. [Debtors] believe the Amended Plan is in the best interest of our creditors and the Bankruptcy Estate and provides for the maximum reasonable recovery to creditors. The affirmative vote of 100% of the creditors voting confirms the creditors' confidence in the Amended Plan.[14]

Debtors' Amended Plan proposes to pay unsecured creditors between $140,690 and $162,690, depending on total administrative expenses and Ms. Zimont's net bonus

---

[3] *Id.* at Schedule I, page 46 of 71, line 5b.
[4] DE 51 at page 6 of 10. Debtors Schedule I was not amended to reflect this income or whether his income is a gross or net amount.
[5] DE 1 at page 27 of 71.
[6] *Id.* at page 41 of 71.
[7] DE 35.
[8] DE 36.
[9] DE 47.
[10] DE 50.
[11] DE 51.
[12] DE 62.
[13] DE 63.
[14] DE 63 at page 4 of 7.

2

income.[15] Debtors' Amended Plan proposes to pay into the Amended Plan most (but not all) of their projected disposable income. Exhibit 3 attached to Debtors' Amended Disclosure Statement reflects that Mr. Zimont's income is accounted for in calculating Debtors' disposable income.

Debtors filed additional documents in response to the Court's questions related to their retirement assets.[16] Debtors' Retirement Memorandum disclosed that the balance due on the Retirement Plan Loan as of March 13, 2020 was $7,700. The Retirement Plan Loan is being repaid post-petition from Ms. Zimont's gross wages at the rate of approximately $420 per month.[17] After conferring with Ms. Zimont's retirement plan administrator, the Court was advised by Debtors' counsel that the Retirement Plan Loan was secured by the assets in Ms. Zimont's retirement account and payments could not be deferred or reduced.[18] If Ms. Zimont defaulted on the Retirement Plan Loan, that plan's administrator would offset her retirement assets to satisfy the balances owed on the Retirement Plan Loan.[19] That setoff would, in turn, cause a taxable event to occur in the amount of the offset plus a 10% early distribution[20] penalty which would be assessed in the year of such offset. For the sake of discussion, the Court will assume the tax bill to the Zimonts would total about 34% of the amount offset.[21]

At the hearing on confirmation of Debtors' Amended Plan, Debtor's counsel noted Ms. Zimont had been making voluntary post-petition contributions to her current employer's retirement plan. Subsequent to that hearing, Debtors filed their Information

---

[15] DE 50 at page 10 of 16.
[16] Debtors filed Declaration Regarding Childcare Expenses at DE 64 and Memorandum Regarding Debtors' Pre-Petition 403(b) Retirement Loan ("Retirement Memorandum") at DE 66.
[17] DE 66.
[18] *Id*.
[19] Under § 362(b)(19), there is no bankruptcy stay preventing a retirement plan administrator from withholding an employee's wages to repay such loan. However, Ms. Zimont no longer works for the employer/sponsor of that retirement plan. The Court is unaware of any exception to the bankruptcy automatic stay permitting the retirement plan administrator to repay the Retirement Plan Loan by offset without first gaining stay relief in this case.
[20] Ms. Zimont is under the age of 59 ½. 26 U.S.C. § 72(t)(1) provides for a 10% additional tax on early distributions from qualified retirement plans.
[21] The 10% penalty plus the Debtors' highest marginal tax rate of 24%. The Court estimated Debtors' combined annual income based on the latest MOR filed at DE 72. Debtors listed $15,224 in combined monthly income and the Court multiplied this by 12 to get an annual income of $182,688. That annual income fell in the 24% tax bracket for married individuals filing jointly. See 26 U.S.C. § 1(j)(2).

3

Regarding Post-Petition 401(k) Contributions and 403(b) Loan Payments ("Retirement Plans Information"), disclosing that a total of $4,207 had been contributed post-petition to Ms. Zimont's current 401(k) ($525/month)[22] and $3,403 had been paid post-petition towards repayment of the Retirement Plan Loan.[23] Without disclosing the matter, the Debtors' Plan presumably contemplates that, post-confirmation, the Debtors would continue making contributions of $525/month towards Ms. Zimont's current employer's sponsored retirement plan.

This Court entered its April 20, 2020, Under Advisement Order[24] to which the Debtors filed their Statement of Controverting Facts.[25] Debtors also filed their Notice of Filing Revised Budget related to Debtors' First Amended Plan and Disclosure Statement.[26] A hearing was held on May 11, 2020, at which these matters were discussed at length.

## II. JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157(b)(2)(A), (E), (M), (L) and (O).

## III. ISSUE

Whether Debtors' post-petition repayment of their Retirement Plan Loan or Debtors' post-petition contributions to their retirement plans prevent confirmation of Debtors' Plan.

---

[22] The $525/month estimate is slightly higher than what Debtors' disclosed in their Schedules and Statements. The $525/month figure was reached based on the information in the Retirement Plans Information, which revealed a total of $4,207 in contributions since Debtors' bankruptcy. The Court divided $4,207 by 8 (the number of months Debtors' have been in bankruptcy) to reach the $525/month estimate.
[23] DE 71.
[24] DE 73.
[25] DE 76.
[26] DE 79.

4

## IV. LEGAL ANALYSIS

### A. Debtors' Fiduciary Duty

A debtor-in-possession is a fiduciary for their bankruptcy estate and assumes virtually all of the rights and responsibilities of a bankruptcy trustee.[27] A debtor-in-possession owes a duty to creditors of the estate not to waste the estate's assets.[28] Although "[o]ne of the most difficult concepts an individual Chapter 11 debtor has to grasp is that once he files bankruptcy he has a fiduciary duty to his creditors to act in the best interest of the bankruptcy estate[,]" such duties "imply a special burden on debtors…to ensure that the resources that flow through the debtor-in-possession's hands are used to benefit the unsecured creditors and other parties in interest."[29]

### B. Debtors' Post-Petition Earnings Are Property of the Estate

Upon commencement of a bankruptcy case, all the debtor's property passes to the estate.[30] Section 1115[31] determines what is property of the estate in an individual's chapter 11 bankruptcy. Section 1115(a)(2) provides, in relevant part:

> In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541 –
> …
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7, 12, or 13, which occurs first.[32]

Section 1115(a) expanded the definition of property of the estate in individual chapter 11 cases to include property obtained by the debtor after the commencement of the case.[33] Property of this bankruptcy estate includes Debtors' post-petition income.

---

[27] 11 U.S.C. § 1107. See also *In re Bame*, 251 B.R. 367, 373 (Bankr. D. Minn. 2000) (citing *Wolf v. Weinstein*, 372 U.S. 633, 649-50 (1963)).
[28] *In re Bame,* 251 B.R. at 373 (citing Jeffrey C. Krause, *Whose Lawyer Are You: Fiduciary Obligations of Debtor and Debtor-in-Possession and Counsel*, 31 Beverly Hills B.A. J. 37, 39 (1997)).
[29] *In re Breland*, 570 B.R. 643, 656 (Bankr. S.D. Ala. 2017).
[30] 11 U.S.C. § 541.
[31] Unless indicated otherwise, statutory citations refer to the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.
[32] 11 U.S.C. § 1115(a)(2).
[33] *Zachary v. California Bank & Trust*, 811 F.3d 1191, 1197 (9th Cir. 2016) (interpreting BAPCPA amendments).

5

Section 541(b)(7)(A) excludes from property of the estate wages withheld by an employer for payments as contributions to qualifying retirement plans.[34] The Ninth Circuit Bankruptcy Appellate Panel ("BAP") considered whether a chapter 13 debtor's voluntary post-petition contributions to a 401(k) retirement plan were excluded when calculating his or her disposable income.[35] In *In re Parks*, the BAP determined that "by reading §541(a)(1) and § 541(b)(7)(A) together, the most reasonable interpretation of §541(b)(7)(A) is that it excludes from property of the estate only those 401(k) contributions made before the petition date."[36] The Court went on to hold that despite §541(b)(7)(A)'s exclusion of wages withheld by employers for qualifying retirement plans from property of the estate, such contributions to qualifying retirement plans were not excluded when calculating debtor's disposable income.[37] This Court acknowledges that the BAP was analyzing the question in the context of a chapter 13 proceeding but still finds the analysis and rationale employed by the BAP to be instructive for it tells us that § 541(b)(7)(A) does not exclude from property of a bankruptcy estate the Debtors' post-petition contributions to a qualified retirement plan.

### C. § 1129(a)(3) Good Faith Requirement

Section 1129(a) lists 16 requirements for a plan to be confirmed under chapter 11.[38] Section 1129(a)(3) precludes confirmation of a plan that is not proposed in good faith.[39] Case law defines the good faith requirement as requiring there to exist "a reasonable likelihood that the plan will achieve a result consistent with the objections and purposes

---

[34] 11 U.S.C. § 541(b)(7).
[35] *In re Parks*, 475 B.R. 703, 706 (B.A.P. 9th Cir. 2012).
[36] *Id.* at 708.
[37] *Id.* At least one court disagrees with the BAP's conclusion in *Parks* and quite cogently explains why *Parks* is incorrect. See *In re Anh-Thu Thi Vu*, 2015 WL 6684227(Bankr. W.D. Wash. 2015). However, as this Court stated in *In re Sample*, "so long as there is not a contrary published opinion from the District Court of Arizona, this Court will follow the opinions of the Ninth Circuit BAP, whether or not this Court agrees with the reasoning behind the particular BAP decision." *In re Sample*, 2013 WL 3759795 (Bankr. D. Ariz. 2013).
[38] 11 U.S.C. § 1129(a).
[39] 11 U.S.C. § 1129(a)(3).

6

of the Bankruptcy Code."[40] The primary purposes of chapter 11 are to rehabilitate the debtor and maximize the value of the estate.[41] The good faith requirement under §1129(a)(3) is narrower than the requirement that a petition be filed in good faith and focuses exclusively on the filed plan.[42] The good faith determination is based on the totality of the circumstances.[43]

### D. § 1129(a)(15) Disposable Income Requirement

Section 1129(a)(15) requires that the value to be distributed under a plan is not less than the projected disposable income of the debtor to be received during the 5-year plan period.[44] Significantly, § 1129(a)(15) only applies where the holder of an allowed unsecured claim objects to the confirmation of the plan. The statute provides, in relevant part:

> (A) The value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.[45]

Where § 1129(a)(15) is applicable, "Congress made clear that a chapter 11 plan of any length may be confirmed as long as the value of the property to be distributed is not less than the projected disposable income of the debtor to be received over five years (or the length of the plan, whichever is longer)."[46] Section 1325 (b)(2) defines "disposable

---

[40] *In re Madison Hotel Assocs.*, 749 F.2d 410, 424-25 (7th Cir. 1984). See also *In re Stolrow's Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988); *In re Jorgensen*, 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986); *In re Corey*, 892 F.2d 829, 835 (9th Cir. 1989).
[41] *In re Sunnyslope Hous. Ltd. P'ship*, 859 F.3d 637, 646-47 (9th Cir. 2017) (*en banc*).
[42] 7 *Collier on Bankruptcy* ¶ 1129.02 (16th Ed. 2019). See also *Stolrow's Inc.*, 84 B.R. at 172 and *Madison Hotel*, 749 F.2d at 425.
[43] *Stolrow's Inc.*, 84 B.R. at 172.
[44] 11 U.S.C. § 1129(a)(15).
[45] *Id.*
[46] *Baud v. Carroll*, 634 F.3d 327, 340 (6th Cir. 2011). See Randolph J. Haines, *Chapter 11 May Resolve Some Chapter 13 Issues*, 8 Norton Bankr. L. Adviser 1 (August 2007).

7

Case 2:19-bk-09079-DPC    Doc 80    Filed 05/11/20    Entered 05/11/20 15:56:48    Desc
Main Document    Page 7 of 13

income" as the current monthly income received by the debtors with exceptions that do apply in this case.[47] Current monthly income is broadly defined under § 101(10A) as "the average monthly income from all sources that the debtor receives…" In calculating a chapter 13 debtor's disposable income, deductions for debtor's voluntary post-petition 401(k) contributions are not permitted.[48]

The Ninth Circuit has considered whether post-petition retirement contributions are a necessary expense in the context of a § 707(b) motion to dismiss for substantial abuse.[49] The Ninth Circuit determined that there is not a *per se* prohibition against debtors making retirement contributions and bankruptcy courts have the discretion to determine whether such contributions are a necessary expense based on the particular facts of the case.[50] The Ninth Circuit provided the following factors courts should consider when making this determination:

> the debtor's age, income, overall budget, expected date of retirement, existing retirement savings, and amount of contributions; the likelihood that stopping contributions will jeopardize the debtor's fresh start by forcing the debtor to make up lost contributions after emerging from bankruptcy; and the needs of the debtor's dependents.[51]

The BAP has also applied these factors in a similar context and specifically considered the debtor's age and plans to continue working for at least 20 years.[52] The BAP reasoned that interrupting debtor's retirement contributions would have a minimal impact where the debtor does not plan on retiring soon.[53] In *In re Ng*, the BAP also sided with a majority of courts in determining that "[l]oan repayments are 'disposable income' because of their unique character; the debtor is in essence repaying a loan to himself."[54]

---

[47] 11 U.S.C. § 1325(b)(2).
[48] *In re Parks*, 475 B.R. at 709.
[49] *Hebbring v. U.S. Tr.*, 463 F.3d 902, 905 (9th Cir. 2006).
[50] *Id.* at 907.
[51] *Id.*
[52] *In re NG*, 477 B.R. 118, 127 (B.A.P. 9th Cir. 2012)
[53] *Id.*
[54] *Id.* at 128.

## V. APPLICATION OF THE LAW TO THIS CASE

This Court has found no statute or case that squarely answers the question at issue in the case at bar. In looking to whether a chapter 11 plan is proposed in good faith within the meaning of § 1129(a)(3), one court eloquently stated, "[g]ood faith is an amorphous notion, largely defined by factual inquiry." This Court recognizes that the primary purposes of a chapter 11 may often appear to conflict with one another. On the one hand, the purpose of a chapter 11 is the rehabilitation of a debtor and, on the other, to maximize the value of the estate. This Court will analyze two distinct, yet equally important aspects of Debtors' proposed Amended Plan and Disclosure Statement. First, Debtors' failed to adequately disclose their post-petition contributions to Ms. Zimont's 401(k). Second, even if the Debtors hereafter file an amended disclosure statement which adequately discloses their post-petition 401(k) contributions, such post-petition contributions impermissibly divert Debtors' disposable income for their exclusive benefit and to the detriment of their unsecured creditors.

### A. <u>Debtors' Failure to Disclose</u>

Debtors' contributions to Ms. Zimont's 401(k) plan were not adequately disclosed in Debtors' Amended Disclosure Statement or Debtors' Amended Plan. The Debtors did disclose Ms. Zimont's post-petition contributions to her 401(k) plan in Schedule I, Line 5 ( c)[55] and in their Amended Declaration of Employer's Payments Within 60 Days[56] but there is no mention in their Amended Plan or Amended Disclosure Statement of their post-petition retirement plan contributions or their intent to continue such contributions post-confirmation. When creditors were asked to vote on Debtors' Amended Plan, they did not have this important information at hand.[57]

---

[55] DE 1.
[56] DE 25.
[57] According to Debtors' Ballot Report, 4 of the Debtors' 30 unsecured creditors voted in favor of the Amended Plan. The amount of their claims totaled $172,871. No unsecureds voted against the Amended Plan. 2 of these 4 voting creditors are insiders whose votes cannot be counted for confirmation purposes. See §1129 (a)(10). Of the remaining creditors who voted for the Amended Plan, their claims totaled $34,171, 7% of the total unsecured claims of $488,900. In summary, 7% of the Debtors' creditors holding 7% of the unsecured claims voted for the Amended

Based on Debtor's failure to disclose this significant item in their Amended Disclosure Statement or Amended Plan, this Court cannot find that the Debtors' Amended Plan was proposed in good faith. Debtors' Plan does not satisfy the requirement of §1129(a)(3) and cannot be confirmed.

### B. Even if Debtors' Disclosures Were Adequate, the Court Cannot Find Debtors' Plan Was Proposed in Good Faith

Even assuming Debtors' file a new plan and disclosure statement adequately disclosing post-petition contributions to their 401(k) plan, this Court finds Debtors' failure to contribute this income and their post-petition repayments towards the Retirement Plan Loan to their Amended Plan violates § 1129(a)(3). Although this Court acknowledges that §1129(a)(15) is not necessarily triggered unless a creditor objects to an individual's chapter 11 plan, the Court finds that Debtors' failure to contribute approximately $39,200[58] over the life of the Amended Plan constitutes cause to deny confirmation of Debtors' Amended Plan under §1129(a)(3).

Section 1129(a)(15) requires an individual chapter 11 debtor to distribute value of property that is not less than debtor's projected disposable income. Such calculation of Debtors' disposable income would require inclusion of both the amounts Debtors' are repaying on the Retirement Plan Loan and the voluntary contributions to Debtors' 401(k) plan. Here, Debtors are distributing far less than their entire disposable income by virtue of (a) repaying the Retirement Plan Loan at $420 per month until it is paid in full and (b) continuing to make contributions to Ms. Zimont's 401(k) plan in the amount of approximately $525 per month. The Court finds that Debtors have not discharged their

---

Plan. However, those voting creditors were not adequately apprised of material disclosure omissions concerning Debtors' post-petition use of bankruptcy estate property to increase Debtors' exempt retirement assets.

[58] The Court comes to this figure based on the Retirement Loan Information filings and the following math: The balance of the Retirement Plan Loan is $7,700. Debtors are currently contributing $525 per month to their 401(k). Under the current Amended Plan Debtors will pay off the $7,700 balance due on their Retirement Plan Loan. Debtors will also make 60 monthly contributions of $525 ($31,500). ($31,500 + $7,700 = $39,200). The Court is mindful of the increased tax liability they will bear if the $7,700 loan is partially paid by the retirement plan administrator and if pre-tax contributions to the plan cease.

fiduciary duties to their creditors when such a significant portion of their disposable income is used post-petition to build up Debtors' exempt retirement assets to the detriment of the unsecured creditors of their estate. Moreover, if the *Hebbring* or *Ng* cases referenced in Section IV (D) above are pertinent to this chapter 11 case,[59] the Debtors have not in their Declaration or elsewhere demonstrated to this Court that the Retirement Plan Loan repayments or their ongoing retirement plan contributions are "necessary expenses."

No objection was filed to the Debtors' Plan so the provisions of § 1129 (a)(15) are not applicable.[60] Moreover, nothing contained in section § 1129(a) requires a debtor to commit all or any definitive portion of their disposable income to fund their chapter 11 plan. Rather, §1123(a)(8) requires an individual chapter 11 debtor to provide for payment to unsecured creditors "all or such portion of earnings from personal services performed by the debtor …as is necessary for the execution of the plan.[61]"The Bankruptcy Code does not mandate payment into an individual chapter 11 plan all income which was pre-petition dedicated to retirement plan contributions or loan repayments. Nevertheless, this Court is persuaded that, viewing in totality §§ 1123(a)(8), 1129 (a)(15) and 1325 (b)(2), Congress intended that an individual chapter 11 debtor commit to their plan that portion of their income which was otherwise used to pay their Retirement Plan Loan and to make further retirement plan contributions, unless such contributions are found by the court to be "necessary expenses" of the debtor. The Court does not propose to identify how much of Debtors' disposable income needs to be committed to their plan. Rather, the Court cannot find Debtors' plan was proposed in good faith where a portion of their income is being used to increase the size of their exempt retirement assets. This *sua spo*nte inquiry by the Court is not prohibited by the Code or by any case law known to this Court.

---

[59] Recall those cases were concerned with possible dismissal of an individual's chapter 7 case under § 707(b).
[60] At least one court has suggested that, in the chapter 13 context, absent an objection by a trustee or creditor, the court may not *sua sponte* raise issues concerning a debtor's disposable income calculations. *Briggs v. Johnson*, 591 B.R. 664 (Bank. W.D. La. 2018). This may pertain to individual chapter 11 cases as well, but that issue need not be decided here. There have been no objections to the Debtors' Amended plan which would invoke a § 1129 (a)(15) analysis.
[61] Courts have compared 1123(a)(8)'s requirement to a similar requirement found in 1322(a)(1).

11

1    At least one bankruptcy judge has suggested (in the context of a chapter 13) that a
2  debtor should be permitted to direct a portion of their disposable income to fund a savings
3  account to help smooth over the inevitable ups and downs experienced over the course of
4  a debtor's chapter 13 plan.[62] This may well make sense in both chapter 13 plans and in
5  the case of an individual's chapter 11.  However, such a savings plan is far different than
6  permitting a debtor to use estate property in order to save for their retirement. The former
7  has the potential of aiding a successful conclusion to their plan thereby benefitting their
8  creditors. The latter serves only a debtor's interests and does so to the direct detriment of
9  their creditors.

10    The Court notes that Debtors' unsecured claims totaled $488,900. Debtors'
11  Amended Plan proposes a 28% to 33% repayment to unsecured claimants. Additional
12  distributions of $39,200 to unsecured creditors would represent an 8% increase in
13  distributions to unsecured claimants. This fact together with the other above-outlined
14  circumstances of this case lead this Court to conclude Debtors' have not satisfied the good
15  faith requirements of § 1129(a)(3).

## VI.  CONCLUSION

Debtors' fiduciary duties in this case include a duty to maximize this bankruptcy estate for the benefit of unsecured creditors. Debtors' proposed Amended Plan which calls for diversion of their post-petition income to repay the Retirement Plan Loan and to make ongoing contributions to Ms. Zimont's 401(k), is not in accord with their fiduciary duties. Debtors' Amended Plan looks to maximize their personal exempt retirement assets to the detriment of their creditors. This Court finds that, unless Debtors propose a plan calling for (a) additional plan payments in the amount of the post-petition Retirement Plan Loan payments and contributions to their retirement plan and (b) no further retirement Plan Loan payments or contributions during the life of Debtors' chapter 11 plan, this Court

---

[62] See David R. Jones, *Savings: The Missing Element in Chapter 13 Bankruptcy Cases?*, 26 Am. Bankr. Inst. L. Rev. 243 (2018).

cannot find the Debtors' plan is proposed in good faith and, therefore, must be denied confirmation. However, if the debtors submit an order confirming their Amended Plan which incorporates these required changes, the Court will sign the confirmation order without requiring renoticing of the Amended Plan or Amended Disclosure Statement.

**DATED AND SIGNED ABOVE.**

13

Case 2:19-bk-09079-DPC    Doc 80    Filed 05/11/20    Entered 05/11/20 15:56:48    Desc
Main Document    Page 13 of 13